IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

RUBY BRIGGS,                        )
                                    )
            Plaintiff,              )
                                    )
v.                                  )   Case No. CIV-05-145-FHS
                                    )
MICHAEL J. ASTRUE,                  )
Commissioner of Social              )
Security Administration,            )
                                    )
            Defendant.              )

**REPORT AND RECOMMENDATION**

Plaintiff Ruby Briggs ("Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be REVERSED and the case REMANDED for an award of benefits.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or

impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally,* Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

2

evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).  The court may not re-weigh the evidence nor substitute its discretion for that of the agency.  Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991).  Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight."  Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); *see also*, Casias, 933 F.2d at 800-01.

### Claimant's Background

Claimant was born on April 30, 1962 and was 42 years old at the time of the ALJ's decision.  Claimant completed her high school education through the twelfth grade.  Claimant has worked in the past through her service in the United States Army as a record & parts specialist and cook, through the United States Navy as an engineman and in the United States Army Reserve as a record and parts specialist.  Claimant was discharged from the United States Navy in 1998 for medical reasons and has not worked since that time.  Claimant alleges an inability to work beginning February 4, 2000 as a result of degenerative joint disease, major depressive

disorder, and anxiety disorder.

## Procedural History

On September 19, 2002, Claimant filed for disability insurance benefits under Title II of the Social Security Act (42 U.S.C. § 401, *et seq.*). Claimant alleged an onset date of May 21, 1998, but later amended that claim to February 4, 2000. Claimant's application for benefits was denied initially and upon reconsideration. A hearing before ALJ Michael A. Kirkpatrick was held on June 28, 2004 in Tulsa, Oklahoma. By decision dated July 23, 2004, the ALJ issued a partially favorable ruling, finding that Claimant was disabled beginning on July 1, 2003. On February 9, 2005, the Appeals Council denied review of the ALJ's findings. Thus, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

## Appellate History

On October 11, 2005, Defendant requested that the ALJ's decision be reversed and this case be remanded for the ALJ to "evaluate the severity of Plaintiff's alleged impairments in accordance with the procedure set forth by relevant case law, regulations, and rulings." Claimant responded by objecting to the remand of the case. Claimant contended the record available for review contained all necessary evidence for this Court to award benefits for the disputed period from February 4, 2000 to June 1,

4

2003.  However, Claimant stated that, should the Court determine remand to be appropriate, the ALJ be directed to reconsider his findings on Claimant's credibility.  Claimant also requested that the case be reassigned to a different ALJ in the event of remand.

By Order and Judgment entered December 14, 2005, the presiding United States District Judge concluded remand was necessary to correct a legal error by the ALJ in failing to conduct a step four or step five analysis after finding Claimant suffered from no disabling impairment for the period of February 4, 2000 through June 1, 2003.  The Court also directed that the ALJ conduct an appropriate evaluation of Claimant's credibility on remand, but denied Claimant's request that the Court direct the assignment of the case to a different ALJ.

On December 23, 2005, Claimant perfected an appeal of this Court's Order and Judgment to the United States Court of Appeals for the Tenth Circuit.  By Order and Judgment entered September 5, 2006, the Tenth Circuit reversed and remanded this Court's Order and Judgment.  In so doing, the Tenth Circuit found:

> In this case, the district court's order remanding the case to the agency did not pass on the merits of the Commissioner's decision, other than to order step four and five evaluations.  More specifically, it never addressed the merits of the ALJ's decision concerning the severity and onset date of Ms. Briggs' disability, whether the decision was supported by substantial evidence, or whether the ALJ applied the correct legal standards at each of the five-step analyses. . . .  Therefore, it was not a proper sentence four remand.

As a result, the Tenth Circuit remanded the case "for a

determination on the merits of the onset date and severity of Ms. Briggs' impairments."

Thereafter, Defendant has filed two additional motions for a sentence four remand, both of which have been denied, in light of the Tenth Circuit's explicit directive to review the ALJ's decision on the merits.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step three of the sequential evaluation. He found Claimant's impairments met a Listing on June 1, 2003 but found they did not meet a Listing prior to that time.

**Errors Alleged for Review**

Claimant asserts the ALJ committed error in that (1) evidence developed at the hearing demonstrated Claimant was disabled beginning February 4, 2000; (2) the ALJ failed to make findings at steps four and five of the sequential evaluation; (3) the ALJ failed to properly assess Claimant's onset date; (4) the ALJ failed to properly evaluate Claimant's credibility; and (5) payment should be ordered. Additionally, Claimant reiterates her request that a different ALJ be directed in the event of a remand to Defendant.

**Determination of Onset Date**

While Claimant was serving in the military, she began experiencing facial swelling, choking, difficulty in swallowing, and chronic headaches. Eventually, Claimant suffered from pain and weakness in her knees and osteoarthritis. She began wearing

6

bilateral knee braces and crutches in order to walk. (Tr. 103-104).

Thereafter, Claimant began having bouts of severe major depression and anxiety. Claimant was evaluated by Douglas A. Brown, Ph.D., a clinical neuropsychologist on March 9, 1999. He diagnosed Claimant with Axis I: Major Depression, Recurrent Type, Moderate; Axis II: Personality Disorder, Not Otherwise Specified with Mixed Features Including Passive-Aggressive, Obsessive-Compulsive, Schizoidal, and Avoidant Elements. His prognosis for significant improvement over the next 12 months to be "rather poor." (Tr. 113-114).

On February 14, 2000, Claimant was evaluated by Steve Hirschorn, Ph.D. He diagnosed Claimant with Axis I: Major Depression, Single Incident Without Psychotic Features, Mood Disorder due to Bell's Palsy or adrenaline deficiency, provisional, Pain associated with both psychological factors and medical condition; Axis II: None; Axis III: High blood pressure, Bell's palsy, adrenalin deficiency, post hysterectomy; Axis IV: Chronic pain and health problems; Axis V: GAF 50. Claimant was found to hear voices calling her name, was sad and tearful, experiencing feelings of hopelessness and helplessness, and appeared "extremely depressed." (Tr. 100-102).

Through several months in 2002, Claimant was attended by Diana E. Bost, Ph.D., a licensed psychologist. Dr. Bost found Claimant

7

suffered from dystymia, chronic severe - depression secondary to medical condition. She prescribed psychotherapy. (Tr. 525).

On November 7, 2002, Claimant was examined by Minor W. Gordon, Ph.D., psychologist. He diagnosed Claimant with adjustment disorder with depressed mood, mild to moderate, secondary to her general medical condition. (Tr. 508-510).

On January 27, 2004, Claimant was attended by Larry Vaught, Ph.D. Dr. Vaught determined Claimant's status at Axis I: Major Depressive Disorder, Moderate Recurrent Anxiety Disorder, NOS, Psychological Factors Affecting a Physical Condition; Axis II: Paranoid and Avoidant Features; Axis III: See Physician's Report; Axis VI: Psychosocial Stressors – Occupational Problems, Medical Problems, Problems Related to Social Environment; Axis V: GAF 47. (Tr. 732).

At the hearing on Claimant's application, medical expert testimony was received by the ALJ from Dennis Rawlings, Ph.D., a licensed clinical psychologist. Dr. Rawlings thoroughly reviewed Claimant's medical records for treatment of her depression in his testimony. Dr. Rawlings concluded Claimant suffered from a depressive condition which waxed and waned in its symptoms and severity. (Tr. 95). That is, Claimant experiences a "deteriorating process and sometime (sic) she looks better, sometimes she looks worse and she moves back and forth across that GAF of 50 line." (Tr. 93). Dr. Rawlings recognized Dr. Bost's

8

diagnosis of dysthymia, which he testified was a milder form of major depression. (Tr. 92-93). Similarly, Dr. Rawlings discounted consistent findings by Dr. Gordon. (Tr. 93). However, he attributed this diagnosis to the deteriorating nature of the condition. Id.

When pressed by counsel to establish an onset date, Dr. Rawlings testified

> Q: . . . how do you feel about the onset of 2/14/2000?
>
> A: . . . My role here really is to review the medical record and testify as to what the medical record says. We have the same disorder across time. We have the same symptoms across time. There does appear to be a waxing and waning of symptoms irrespective of what I might think of individual examiners and I don't think we can deny that. There is also a chronic pain disorder here and that may play another, another role. In fact, I know that does play, play a role in her impairment as well. If you want to add the chronic pain issue to the waxing and waning depressive condition, and you consider those together, then I would say, I would say the 2/14/2000, I may be going out on a limb a little bit too much.
>
> Q: Okay. Just one last question. Given the waxing, waning nature of the presentation in the medical records, do you think this claimant would be able to sustain a job for a significant period of time?
>
> A: At the present time?
>
> Q: Or from the period of February 2000 forward.
>
> A: I doubt that. I doubt that seriously. And, and I have to, have to testify that part of my rationale for that opinion is based on her testimony and her testimony is completely consistent with the illness of major depression, particularly with a deteriorating, particularly with a cognitive impairment component.

9

(Tr. 95-96).

In his decision, the ALJ found Claimant was diagnosed in 2002 with dysthymia, which he asserted showed "a mild level of functioning, which then became more severe, coinciding with her deteriorating physical condition." (Tr. 22). The ALJ recognized Dr. Rawlings' testimony with regard to Listing 12.04 pertaining to major depressive disorder. He also recited Dr. Rawlings specific marked limitations upon Claimant's functional abilities. Id. The ALJ then concluded Claimant met Listing 12.04 beginning June 1, 2003 but not before. (Tr. 22-23). The ALJ found it was reasonable to infer that the disease process of her mental impairment was clinically present some six months before her diagnosis in January of 2004. Thus, his establishment of the June 1, 2003 onset. (Tr. 22).

The "onset date" is defined as "the first day an individual is disabled as defined in the Act and the regulations." Soc. Sec. R. 83-20. Relevant factors for this determination are Claimant's allegation of an onset date, his work history, and the medical evidence, with medical evidence being the primary element in determining the onset date. Id.; Reid v. Chater, 71 F.3d 372, 373 (10th Cir. 1995). "[T]he date alleged by the individual should be used if it is consistent with all the evidence available . . . However, the established onset date must be fixed based on the facts and can never be inconsistent with the medical evidence of

record."  Soc. Sec. R. 83-20.

In this case, the ALJ's determination of an onset date of June 1, 2003 was both arbitrary and not supported by substantial evidence. The ALJ interposed his own opinion as to when Claimant's condition was sufficiently severe to meet a Listing without regard to the express medical evidence provided by Dr. Rawlings which established an onset date. The ALJ cannot simply substitute his perceived medical expertise for that of competent medical experts. Kemp v. Bowen, 816 F.2d 1469, 1476 (10th Cir. 1987)(citations omitted).

The ALJ found from the evidence that Claimant had been diagnosed with dysthymia, which he found to be something less than major depression. However, the ALJ failed to take into account Dr. Rawlings statements concerning the waxing and waning nature of her condition and that she met Listing 12.04 on February 14, 2000.[2] He instead supplanted this evidence with his own determination of when Claimant's condition became severe enough to qualify for a Listing.

Moreover, the ALJ failed to consider Dr. Rawlings' testimony

---

[2] This Court acknowledges the medical definition of "dysthymia" does not represent a "significant difference" from major depression, as suggested by the ALJ. "Dysthymia disorder" is defined as "chronically depressed mood that occurs for most of the day more days than not for at least 2 years." Its "associated features are similar to those for a Major Depressive Episode" with "feelings fo inadequacy; generalized loss of interest or pleasure; social withdrawal; feelings of guilt or brooding about the past; subjective feelings of irritability or excessive anger; and decreased activity, effectiveness or productivity." American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders, 376-78 (4th Ed. Text Revision 2000).

regarding the combined effect of her depression with her chronic pain disorder in determining the point in time the severity of her conditions allowed her to meet a Listing. 20 C.F.R. § 404.1523. Clearly, the substantial medical evidence of her combined conditions established the earlier onset date.

On review, this Court "shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, *with or without remanding the cause for a rehearing.*" 42 U.S.C.A. § 405(g)(emphasis added by this Court). "Outright reversal and remand for immediate award of benefits is appropriate when additional fact finding would serve no useful purpose." Sorenson v. Bowen, 888, F.2d 706, 713 (10th Cir. 1989) quoting Williams v. Bowen, 844 F.2d 748, 760 (10th Cir. 1988).

Defendant has repeatedly urged that this case should be remanded to the ALJ for further proceedings. With regard to the onset date evidence, Defendant contends Dr. Rawlings "vacillated between February 4, 2000 (Plaintiff's alleged onset date), and January 2004." The record does not support this statement. It is difficult to conceive how Dr. Rawlings could have been more explicit in his final determination as to the earlier onset date. At the same time, Defendant admits "the ALJ's decision did not fully address Dr. Rawlings' testimony. Therefore, the ALJ did not apply the correct legal standards, and substantial evidence did not

support his decision." To the contrary, this case does not present the circumstance where the ALJ failed to "fully address" the medical expert's testimony – he acknowledged it and ignored it in favor of his own, unsubstantiated opinion as to an estimated onset date. As a result, the remand of this case would serve no purpose other than to possibly allow the ALJ to reassess the evidentiary record. However, this Court can accomplish the same task without adding to the considerable delay Claimant has already encountered in receiving the benefits to which she is entitled. Substantial evidence supports a finding Claimant met a Listing as of the earlier onset date.

This raises the final issue for consideration. The parties do not discuss the discrepancy in the onset date between that alleged by Claimant and that to which Dr. Rawlings testified at the hearing. Claimant alleges an onset date of February 4, 2000 while Dr. Rawlings established the onset date of February 14, 2000. Since this Court must rely upon the evidence in the record, the latter date represents the date at which Claimant was disabled and met Listing 12.04.

## Conclusion

The decision of the Commissioner is not supported by substantial evidence and the correct legal standards were not applied. Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of Social

13

Security Administration should be **REVERSED** and this case should be **REMANDED**, with the directive for Defendant to award Claimant benefits beginning on the established onset date of February 14, 2000.

The parties are herewith given ten (10) days from the date of the service of this Report and Recommendation to file with the Clerk of the court any objections, with supporting brief. Failure to object to this Report and Recommendation within ten (10) days will preclude appellate review of this decision by the District Court based on such findings.

DATED this 7th day of November, 2007.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE